CULPEPPER, Judge.
This is the second suit filed by James Henry Williams against Harry Friedman, Jr. to rescind the sale of a herd of cattle. In the previous suit, Williams v. Friedman, 346 So.2d 265 (La.App. 3rd Cir. 1977), which was a companion suit to First National Bank of Shreveport v. Williams, 346 So.2d 257 (La.App. 3rd Cir. 1977), Williams sought to avoid the sale principally on the grounds of his mental incapacity. We affirmed the judgment of the trial court in favor of Friedman upholding the sale.
In the present case, Williams seeks to avoid the sale on the grounds of redhibitory vices, i. e., that 53% of the herd had brucel-losis at the time of the sale. In the alternative Williams seeks a reduction in the purchase price. Defendant Friedman filed a reconventional demand for expenses incurred in the maintenance of the herd for approximately 21 months between the date of the sale and the time of final delivery of the cattle to Williams. In answer to Friedman’s reconventional demand, Williams pleaded a set-off for the value of cattle which died while in Friedman’s possession. The district judge rejected Williams’ demand to rescind the sale. He awarded Friedman $68,034 on his reconventional demand, subject to a set-off in favor of Williams in the sum of $27,410. Both plaintiff and defendant appealed.
The substantial issues are whether the trial judge erred in: (1) rejecting Williams’ demand to rescind the sale for redhibitory vices, both on the grounds that the redhibi-tory action was prescribed under LSA-C.C. Article 2535 and on the basis that Williams failed to prove the herd was infected with brucellosis at the time of the sale; (2) in awarding Friedman $68,034 on his recon-ventional demand; and (3) in granting Williams a set-off of $27,410.
In detailed written reasons, the trial judge gave his findings of fact, which we will briefly summarize. On January 8, 1975, Friedman sold to Williams a herd of cattle consisting of 590 cows, 129 calves, 225 yearlings and 34 bulls, a total herd of 978. The total price for the cattle was $185,000. At the same time, Friedman sold to Williams certain cattle farm equipment. The total consideration for the cattle and equipment was $243,000, for which amount Williams gave Friedman a promissory note. The cattle and equipment were already subject to a chattel mortgage from Friedman to the First National Bank of Shreveport. Friedman pledged to the bank the promissory note made by Williams.
As part of the same transaction, Friedman leased to Williams approximately 1,600 acres of land on which the cattle were located. Certain cowboys who had been employed by Friedman to maintain the herd were placed on Williams’ payroll and continued to work the cattle.
On January 16, 1975, Williams was committed to a hospital for a mental condition diagnosed as manic-depression. He was discharged from the hospital on February 22, 1975. On March 12, 1975, Williams advised *279 Friedman that he was canceling the sale and that possession of the cattle was returned to Friedman. By letter dated March 18, 1975, Friedman made formal demand on Williams to recognize the sale and to.continue to care for the cattle. Friedman stated in the letter that in the event Williams did not care for the animals, Friedman would “provide minimal requirements” in order to prevent foreclosure of the chattel mortgage and to minimize damages. Friedman also informed Williams that the farm equipment sold to Williams would be used by Friedman in the care and feeding of the animals. Williams refused to recognize the sale or to care for the cattle. In April of 1975, the lease was canceled by mutual agreement.
Friedman retained possession of the herd until, by agreement of the parties, Williams took possession on September 29, 1976 and November 2, 1976. All during the time of Friedman’s possession, the previous lawsuit was in progress. During Friedman’s possession, a total of 255 calves from the herd were sold by agreement of the parties, and the proceeds were applied by agreement to the payment of the note owed by Friedman to the First National Bank.
When Williams took possession of the herd on September 29, and on November 2, 1976, he received 454 cows instead of the 590 originally sold, making a shortage of 136 cows. He received only 25 bulls, instead of the 34 originally purchased,- thus making a shortage of 9 bulls. Also, he received 235 calves.
Immediately on receiving final possession on November 2, 1976, Williams sold through auction barns all of the cattle received by him. Tests run on the cattle at the auction barns showed that 218 cows and 1 bull had brucellosis. Thus, approximately 45% of the cows and bulls sold had this disease. There is no evidence that any of the cattle had previously been tested for brucellosis.

RESCISSION OF THE SALE

Williams seeks to rescind the January 8, 1975 sale of the herd on the grounds that he purchased the cattle for breeding purposes, and had he known of the shortage of grown cows, or had he known that a large percentage of the herd was infected with brucellosis, he would not have purchased the cattle. Williams argues that Friedman warranted the sale of the 590 grown cows in good condition, and that Williams finally received only 454 cows, a large percentage of which had brucellosis, a disease which renders a herd unsuitable for breeding.
The applicable Civil Code Articles on red-hibition are as follows:
“Art. 2520. Redhibition, definition
“Art. 2520. Redhibition is the avoidance of sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.
“Art. 2521. Apparent defects discoverable by buyer
“Art. 2521. Apparent defects, that is, such as the buyer might have discovered by simple inspection, are not among the number of redhibitory vices.”
Jurisprudence has established the rule that under Article 2520 the buyer must prove that the defect existed at the time of the purchase. Purvis v. Statewide Trailer Sales, Inc., 339 So.2d 403 (La.App. 1st Cir. 1976); Riche v. Krestview Mobile Homes, Inc., 375 So.2d 133 (La.App. 3rd Cir. 1979); Cutrer v. Kentwood Motors, Inc., 351 So.2d 817 (La.App. 1st Cir. 1977). In this case, Williams purchased the cattle and took possession in January of 1975. He had the burden of proving the cattle had brucellosis at that time. The cattle were not tested for brucellosis until approximately 21 months later. The expert veterinarians who testified expressed the opinion that the positive brucellosis tests in November of 1976 could not with any degree of probability show that the animals in the herd had brucellosis 21 months prior thereto. On this basis, the trial judge held the plaintiff failed to prove the cattle had brucellosis at the time of the sale. The record clearly supports this finding.
On the issue of prescription, the Civil Code provides:
*280 “Art. 2535. Prescription of redhibitory action for animals
“Art. 2535. The redhibition of animals can only be sued for within two months immediately following the sale.”
Friedman contends this redhibitory action is prescribed because it was not filed until November 26, 1976, which was approxi-' mately 22 months after Williams purchased the cattle and first took possession in January of 1975. In opposition to the exception of prescription, Williams argues the jurisprudential rule that prescription does not begin until the buyer knew or should have known of the defect. Smith v. Smith, 29 So.2d 608 (La.App. 1st Cir. 1947).
The trial judge sustained the exception of prescription. We find it unnecessary to rule on this issue because, even if the claim had not prescribed, plaintiff failed, for the reasons stated above, to prove the cattle had brucellosis at the time of the sale.

FRIEDMAN’S RECONVENTIONAL DEMAND FOR MAINTENANCE EXPENSES

The following articles of our Civil Code are applicable to Friedman’s reconven-tional demand for reimbursement of expenses of caring for the cattle during the approximately 21-month period before Williams took possession:
“Art. 2468. Seller’s duty of care pending delivery
“Art. 2468. Until the thing sold is delivered to the buyer, the seller is obliged to guard it as a faithful administrator; and if, through want of this care, the thing is destroyed, or its value diminished, the seller is responsible for the loss.
“Art. 2469. Buyer’s delay in taking possession, effect on seller’s liability
“Art. 2469. The seller is released from this degree of care, when the buyer delays obtaining the possession; but he is still liable for any injury which the thing sold may sustain, through gross neglect on his part.
“Art. 2555. Liability of buyer failing to obtain delivery after default
“Art. 2555. The purchaser, who neglects to obtain delivery of the thing sold, after having been put in default, is answerable to the vendor for the damage which he may sustain on that account, and for the reimbursement of the expense which may have been incurred for the preservation of the thing.”
Friedman claims reimbursement of a total of $112,215 for expenses incurred in caring for the cattle. He itemizes these expenses as follows:
A. Loss of use of land $30,121.00
B. Cash expenses 52,094.00
C. Management services 30,000.00
$112,215.00
In detailed written reasons, the trial judge first recognized that in the prior suit Friedman was awarded reimbursement in the sum of $26,868 for those expenses incurred during the 9-month period from January, 1975 to September 30, 1975. The trial judge then found as a fact that Friedman is entitled to additional reimbursement as follows: For loss of use of 1,575 acres of land, the trial judge awarded $10 per acre for a period of 10 months or a total of $15,750. The judge rejected Williams’ contention that Friedman is not entitled to any award for loss of use of the land because of a verbal understanding at the time the lease was canceled in April of 1975. Williams argues the cancellation of the lease settled any claim for loss of use of the land.
As to Friedman’s cash expenses for labor, equipment expense, seed, feed, etc., the trial judge found from an examination of the books and records kept by Friedman that he was entitled to recover the sum of $46,284.
For management services, Friedman sought $4,000 for bookkeeping services, but the trial judge allowed only $1,000. Friedman sought the sum of $20,000 for his personal services in caring for the herd, but the district judge allowed only $5,000. Thus, the trial judge allowed Friedman total reimbursement of $68,034.
On appeal, Friedman emphasizes his claim for loss of use of the land should be $15.30 per acre for the period September 30, 1975 through December of 1976, a total of *281 $30,121. Friedman also emphasizes that the full claim of $4,000 for bookkeeping services should have been awarded and that his claim of $20,000 for his personal services is clearly proved.
We have carefully reviewed the evidence and find the trial judge was not clearly wrong in his finding of fact as to the items of reimbursement to Friedman, totaling $68,034.

SET-OFF TO WILLIAMS

The most serious issue in this case is the trial court’s finding that Friedman’s failure to cull and sell the mama cows, which were too old or diséased to survive the hard winters, was “gross neglect” within the meaning of LSA — C.C. Article 2469, quoted above. The trial judge held that 126 cows died due to Friedman’s failure to cull. The judge accepted the testimony of employees who handled the herd that cattle management requires the culling and selling of old cows. No culling was done by Friedman. Although Friedman and Williams agreed several times to the sales of calves and yearlings, no request was ever made by Friedman to cull old cows and sell them. The trial judge concluded this constituted gross neglect. • After carefully reviewing the record, we cannot say the trial judge was clearly wrong in this finding of fact.
In computing the amount of the set-off due Williams, the trial judge used the evidence that under normal conditions the death loss in a herd is 2% to 3% per year. A 3% annual loss of 590 cows and 34 bulls over a period 18 months would be 29 cows and 2 bulls. The loss here was 126 cows and 9 bulls. Thus, the trial judge awarded Williams a set-off for 97 cows at $250 each and 7 bulls at a total of $3,160, for a total set-off of $27,410. We find no manifest error in these awards.

DECREE

For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed one-half to the plaintiff and one-half to the defendant.
AFFIRMED.